Tagged opinion

ORDERED in the Southern District of Florida on  Jan 30, 2009



_____
John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

**DAVID R. APODACA,**

    Debtor.
_____/

Case No.: 08-17612-JKO

Chapter 13

### ORDER GRANTING APPLICATION FOR COMPENSATION

**THIS MATTER** came before the Court on attorney Angela R. Bucci's (the "Applicant" or "Ms. Bucci") Second Amended Application for Compensation for Professional Services or Reimbursement of Expenses by Attorney for Chapter 13 Debtor (the "Application"). [DE 81]. Having reviewed the Application, including the attached Contract for Legal Services (the "Retainer Agreement") and Time and Expense memorialization (the "Time Sheets"), as well as having considered applicable law, I find Ms. Bucci to be entitled to fees in the amount of $5,159.00.

Pursuant to the United States Code, an attorney may be awarded fees for "representing the

interests of the debtor in connection with the bankruptcy case." 11 U.S.C. § 330(a)(4)(B). However, "When determining under § 330(a)(4)(B) what constitutes a reasonable amount of compensation, a court is directed by statute to consider the benefit and necessity of such services, together with those additional factors set forth in § 330." *In re Williams*, 384 B.R. 191, 194 (Bankr. N.D. Ohio 2007). One such factor, and that of paramount significance here, is "the rates charged for such services." 11 U.S.C. § 330(a)(3)(B). To determine the "rates charged," I must examine the Retainer Agreement and the Time Sheets, accepting both documents as valid representations of the agreement reached and services rendered.

## THE RETAINER AGREEMENT

For purposes of this inquiry, there are three relevant components of the Retainer Agreement, each delineating a different variety of legal services and setting forth the cost - or method of computing such cost - to be charged for the corresponding services. It is against these sections and prices that the Time Sheets must be read and, indeed, it is these contractual clauses that ultimately give rise to Ms. Bucci's compensation. While these components have no proper heading in the Retainer Agreement, they shall, for purposes of this Order, be classified as "Included Services," "Excluded Services" and "À La Carte Services."

### I. Included Services

With regard to the Included Services, twelve such legal services may be found on pages one through two of the Retainer Agreement. *See* [DE 81]. These twelve items coincide with those enumerated as "minimum" services under the Guidelines for Compensation for Professional Services or Reimbursement of Expenses by Attorneys for Chapter 13 Debtors Pursuant to Local Rule 2016-1(B)(2)(a) (the "Local Guidelines"). These services cover everything from petition preparation and

filing to attendance at Section 341 meetings of creditors.[1] Shortly following this itemization, the Retainer Agreement provides:

> In return for said services, the "client" agrees to pay the total fee of $3,000.00, plus a minimum, non-refundable cost deposit of $474.00 which includes $274.00 for the filing fees, $150 for out of pocket costs and $50.00 for credit counseling (if using a counseling service paid through the attorney). The "client" agrees and understands that any and all deposit monies paid are non-refundable. In the event costs go beyond the minimum cost retainer then the "client" will be billed separately for any additional costs incurred. In the event preparation and appearance at any additional hearings is required, including, but not limited to, a contested matter or contested confirmation hearing and/or if extenuating circumstances arise, the "client" agrees to pay additional fees.

This language constitutes the entirety of the applicable provisions of the Included Services component, for purposes of this analysis.

The contractual fee for Included Services is unambiguous and provides for payment of $3,000.00 (plus $474.00 in fees) for the twelve enumerated services. The $3,000.00 sum is referenced as a "total fee." The only contractual provision for additional payment is for "costs [that] go beyond the minimum cost retainer" of $474.

The Supreme Court of Florida has dictated that "every contract, deriving its force from the mutual assent of the parties, is to be interpreted according to the intention of the parties, so far as it is legal, and mutually understood." *Fry v. Hawley*, 4 Fla. 258, 275 (Fla. 1851). The unamibiguous

---

[1] Item 5 on the list reads literally, "Preparation for an attendance at all §341 Meeting of Creditors [sic]." In light of the contextual surroundings of this language, I find this to be a typographical error, not an actual point of ambiguity. As such, the presence of the word "all" leads me to interpret the word "Meeting" as being in the plural ("Meetings"). Further, given the oddity of placing an indefinite article such as "an" in front of the word "attendance" in such a setting, I shall construe that word to mean "and," understanding the final letter to have been inadvertently omitted.

intent of the parties here is that fees for Included Services are capped at $3,000.[2]

## II. Excluded Services

The Retainer Agreement provides that "The client has been advised and agrees that the above fee does not include the following," and then goes on to enumerate eight legal services. The "above fee" is clearly a reference to the $3,000 fee for Included Services, and the list of such Excluded Services is a relatively simplistic one, inclusive of matters that often arise in the context of a Chapter 13 proceeding but are not per se attendant to such a proceeding.[3] Using the same principles of contract construction as are discussed above, I view these services to be akin to those "costs [that] go beyond the minimum cost retainer" referenced in the Included Services component of the Retainer Agreement.

---

[2]If there were any ambiguity in the contract, it would be construed against the interests of the drafting party under the established principles of contractual interpretation. *See, e.g., Hurt v. Leatherby Ins. Co.*, 380 So.2d 432, 434 (Fla. 1980); *Patterson v. Gage*, 11 Colo. 50, 55-56 (Colo. 1887); *White v. Reed*, 15 Conn. 457, 466 (Conn. 1843); *Restat. 2d of Contracts*, § 206. Accordingly, this provision should be read against the interests of Ms. Bucci, and the meaning deduced shall be that the $3,000 is a "total fee" for those twelve enumerated services, regardless of the time expended in their furtherance by the Applicant. It is fair to note that the Retainer Agreement is not a model of clarity.

[3]The eighth enumerated service is a catch-all of sorts, described in the Retainer Agreement as "Any and all other work not included in the afore stated description of work." This language cannot be taken literally - doing so would not only undermine the spirit of the twelve Included Services but, indeed, would render nonsensical the provision of À La Carte Services later in the Retainer Agreement. Accordingly, this provision must be construed in a narrower, more consistent manner. Based on the methods of construction delineated above, I interpret this provision to encompass any legal services, the skeletal base of which is not provided for elsewhere in the Retainer Agreement. I do not deem ordinary "work" to fall within this category, inasmuch as one may readily argue any client e-mail to constitute work, yet the exclusion of "Client E-Mails" from the Included Services component surely should not be understood to mean that such correspondences accrue at this added rate. Nor will I include in this catch-all section the review of client documentation, another unlisted service that is not merely common to the practice of law but, indeed, necessary.

The Excluded Services section clearly provides, "The 'client' agrees to pay the 'attorney' for the above matters on a separate retainer basis based on an hourly rate of $200.00 for office time and $290 per hour for out of office time." This language is relatively clear,[4] and it accordingly should be understood that such Excluded Services are to be billed to the client at those two rates.

### III.    À La Carte Services

Immediately following the aforementioned recitation of hourly rates for Excluded Services, in the same paragraph, the Retainer Agreement provides, "The following matters will be charged additional fees as listed plus additional costs of $25.00 per matter." A list of seven potential services then ensues, with a designated "price" of $500.00 being fixed for each except the sixth, which is quoted at $250.00.[5] I find no issues or ambiguities to exist in this provision, consider the fees, with one exception,[6] to be reasonable, and encounter no difficulties construing the plain meaning of the language in a realistically applicable regard.

### IV.    Miscellaneous Fee Provisions

Sensibly construing the twelve Included Services to be provided for a "total fee" of $3,000.00, the Excluded Services to accrue at $200.00/hour for in office time and $290.00 for out of office time, and the À La Carte Services to each cost the Debtor their given quote plus $25.00, the monetary demands of the Retainer Agreement appear complete. However, the contract

---

[4]See note 2 above concerning contractual ambiguity.

[5]Similar to the list of Included Services, this itemization appears to track identically the Local Guidelines. However, the Retainer Agreement prices a Motion to Incur Debt at $500, while the Local Guidelines do so at $250. Such a motion is not at issue here so I need not reach a decision as to the propriety of this deviation from the price allowed under the Local Guidelines.

[6]See, *supra*, note 5.

nonetheless contains certain stray language that is difficult to reconcile with this basic financial arrangement.

Shortly following the language discussed in the À La Carte Services component, the Retainer Agreement provides, "The initial consultation shall be provided free of charge, however additional consultations will be charged at $100.00 per appointment under a separate retainer based on an hourly rate of $200.00 for in office time." Given that "consultations" are not enumerated under any of the three aforementioned fee categories, it initially may seem they have been placed in their own, distinct fourth group of services. However, the literal language of this provision is facially inconsistent - unless all consultations are for thirty minutes (or the billable equivalent), the provision of an hourly rate suggests a conflicting standard. Further, no definition is lent to just what might constitute one such "consultation," and it is accordingly ambiguous whether such is a reference to just personal meetings, or whether it may, too, include phone conversations, e-mails, and other methods of correspondence with the Debtor. Regardless, the rate at which "consultations" should be billed is equally unclear - again, it is confusing whether there is an expectation that all such communications will accrue in thirty minute increments (or the billable equivalent) or, rather, whether their actual time may be measured against an hourly rate of $200.00.

Further complicating this matter, the Retainer Agreement later provides, "If the 'client' fails to communicate with the 'attorney' on a reasonable basis regarding the status of the file and/or in response to the 'attorney's' requests for communication, then the 'attorney' shall make a Motion to Withdraw from the case." This renders the aforementioned consultation language even more difficult to interpret, inasmuch as if one is to interpret any form of communication as a "consultation," then the Retainer Agreement appears to mandate by its terms the accrual of fees in

addition to the $3,000.00 to be charged for the twelve Included Services. Even just three communicative endeavors - a rather low number for a Debtor concerned about the status of his Chapter 13 proceeding - would increase the quoted initial fee by ten percent.

Accordingly, construing this language in the most sensible manner, and, where questionable, against the interests of Ms. Bucci (the drafting party), I understand the term "consultation" to mean a visit between the Debtor and his counsel. I further construe the rate for such a visit to be $200.00 per hour, not to exceed the fee of $100.00 per consultation.[7]

The final relevant clause of the Retainer Agreement provides, "If the 'attorney' has to attend any additional hearings, other than the normal hearings outlined in this agreement or has to attend extra hearings due to the fault of the 'client', the 'client' agrees to pay the 'attorney' an additional fee prior to such hearing, based on an hourly rate normally charged by the attorney." Two significant issues necessarily arise from this provision: First, it is unclear just what "additional" hearings may be, or which such hearings would be due to the "fault of the 'client;'" and, second, the "hourly rate normally charged by the attorney" is not fixed. This is further muddied since one of the twelve Included Services is "Preparation for an attendance at all §341 Meeting of Creditors [sic],"[8] and another allows for "Preparation of and attendance at all necessary pre-confirmation motions brought on behalf of the 'client.'" Since the word "all" must mean "all" by any normative understanding, it is clear that neither pre-confirmation motions nor Section 341 hearings may constitute an "extra" hearing. A provision of the Included Services component further allows for attendance at "all"

---

[7] By the express terms of the Retainer Agreement, I understand the initial consultation to be free of charge to the Debtor.

[8] See, *supra*, n.1.

confirmation hearings, too.

Since the precise nature of just what an "extra" hearing may be appears utterly unascertainable, there is little sense in surmising just what the "normal" hourly rate to be charged shall be. However, suffice it to say that should any odd hearings manage to fit into this vague realm, the $290.00 per hour fee for out of office time allowed in the Excluded Services component would appear to be the contractual number.

## THE TIME SHEETS

Ms. Bucci has attached to her Application a record of the dates on which she worked, and time she expended, in the furtherance of various matters relating to the Chapter 13 proceedings of the Debtor. While her Application is based upon a cumulative 31.58 hours spent, at a rate of $200.00 per hour, such is clearly not the proper method of calculating her fees in light of the aforementioned provisions of the Retainer Agreement. Problematically, while the proper method of memorialization would be to indicate the categorization of time spent, using the three aforementioned fee categories (however characterized by the Applicant), or even to ensure that time explanations are sufficiently clear to allow her client, or me, the ability to easily classify them within the terms of the Retainer Agreement, such is very much not the case here. The Time Sheets are often prohibitively vague, contain generous portions of shorthand, and do not offer any explanation as to just which portions of the Retainer Agreement give rise to which allocations of time.[9] As such, I

---

[9]Three entries on the Time Sheets read simply "E-Mail from Client." Faced with time sheet entries of an identical nature, as well as ones reading "call to client" and "client call" - terms Ms. Bucci, fortunately, did not use - one court has observed, "Together, these characteristics of the Applicant's billable hours make it highly unlikely that it is a contemporaneous record. Worse, given its characteristics, the Applicant's documentation of her billable hours looks like a patchwork of guesses, and not very good ones at that -- thus potentially raising an issue under Bankruptcy Rule 9011. At the very least, however, the Applicant's billing

-8-

must construe all time expenditures to fall within the Included Services flat rate of $3,000, unless the description is sufficiently clear to indicate otherwise.

Based on this analysis of the time sheets, I find that Ms. Bucci is owed the $3,474 for Included Services. I further find Ms. Bucci to have expended four hours of time[10] at continued hearings, between the dates of October 7, 2008 and December 5, 2008, billable at a rate of $290 per hour, under the Excluded Services component of the Retainer Agreement.[11] For these continued hearings, Ms. Bucci is owed $1,160 by the Debtor. Finally, I find Ms. Bucci to have moved for avoidance of one lien, an À La Carte Service to be charged at $500 plus a $25 cost expense. Under the circumstances of this case, I find that Ms. Bucci's compensation, pursuant to 11 U.S.C. § 330(a)(3)(B), must be capped at the "rates charged for such services," and that such rate must be

---

documentation is insufficient so as to allow the Court to make an informed judgment as to those services she performed for the Debtors. As such, it must be discounted insofar as it concerns the time and hourly rate she charged for her services." *In re Williams*, 384 B.R. 191, 195 (Bankr. N.D. Ohio 2007).

[10] Based on the Time Sheets, it appears Ms. Bucci bills in increments of one eighth of an hour (or .12). Oddly, however, Ms. Bucci's time expenditures for continued hearings all seem to fall on clean hourly increments - two being for one hour, and one being for two hours. While this may well be explained by coincidence - billable increments do fall on clean hourly breaks with some frequency - it does strike as relatively extraordinary. Since the Debtor has not raised the propriety of billable increments as an issue, I need not make such a determination. But it should be noted that many courts favor billing in increments of one-tenth of an hour, so as to avoid artificial inflation, and that any billing in increments of a full hour would prove wholly problematic. See, generally, *Republican Party of Minn. v. White*, 456 F.3d 912, 920 (8th Cir. 2006); *Blackman v. Dist. of Columbia*, 59 F.Supp.2d 37, 44 (D. D.C. 1999); *Thomas v. Dist. of Columbia*, 2007 U.S. Dist. LEXIS 20236, 9-10 (D. D.C. 2007); *Gary Brown & Assocs. v. Ashdon, Inc.*, 268 Fed. Appx. 837, 845 (11th Cir. 2008).

[11] While Ms. Bucci does not indicate on her Time Sheets whether these services were performed in her office our outside of her office, logic indicates that continued hearings would occur outside the confines of an attorney's office. As such, the $290 per hour rate is the appropriate rate to be charged for these services.

construed in strict accordance with the Retainer Agreement, as analyzed above.

Accordingly, I find Ms. Bucci to be entitled to $5,159 in fees and expenses for the services she provided under the Retainer Agreement. I further find that these fees and expenses, and the time incurred in connection her representation of the Debtor were reasonable and necessary in the circumstances of this case. Accordingly, the fees and costs allowed, less those already received by the Applicant, shall be paid by the Debtor as part of his Chapter 13 plan. The Debtor, by and through Ms. Bucci, his attorney, is ordered to submit an appropriate amendment to his plan within 20 days of the issuance of this order.

For the reasons stated above, it is hereby **ORDERED** that:

1. Ms. Bucci's Second Amended Application for Compensation for Professional Services or Reimbursement of Expenses by Attorney for Chapter 13 Debtor [DE 81] is **GRANTED** in part. Compensation and reimbursement is **APPROVED** in the amount of $5,159.00.

2. The Debtor, by and through counsel, is **ORDERED** to submit an amendment to his Chapter 13 plan, in satisfaction of this Order, within 20 days.

# # #

Copies furnished to:

Angela R. Bucci, Esq.
2600 N. Andrews Ave.
Wilton Manners, Fl. 33311

Ms. Bucci is directed to serve a conformed copy of this order on all interested parties.